**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| GRACE C. SOTAK, | No. CV-04-1062-PHX-SMM |
| Plaintiff, | **MEMORANDUM OF DECISION AND ORDER** |
| v. | |
| HIGHMARK LIFE INSURANCE COMPANY, a Connecticut corporation, | |
| Defendant. | |

Pending before the Court is Defendant's Motion for Determination of Standard Review and Motion for Decision on the Administrative Record [Doc. No. 28]. Plaintiff has filed a related Motion to Supplement the Record [Doc. No. 36]. After considering the arguments raised in the parties' briefs and conducting a thorough review of the administrative record (the "Record"), the Court issues the following Memorandum of Decision and Order.

**STANDARD OF REVIEW**

In an ERISA case, the default rule is that a court reviews an administrator's denial *de novo* "unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." Abatie v. Alta Health & Life Ins. Co., 421 F.3d 1053, 1059 (9th Cir. 2005) (quoting Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115, 109 S.Ct. 948 (1989). "Only if a plan unambiguously grants discretion to the administrator will we review an administrator's denial of benefits for an abuse of discretion." Id.; Kearny v. Standard Ins. Co., 175 F.3d 1084, 1088-89 (9th Cir. 1999) (en banc).

**BACKGROUND**

Plaintiff was employed by Health International, Inc., ("Health Insurance") as a Nurse Case Manager from July 1993 to October 2002.  Beginning on November 1, 2003, Plaintiff was covered under a group long-term disability policy (the "Policy") issued by Defendant to Health International.

On March 13, 2002, Plaintiff stopped working at Health International and subsequently submitted a long-term disability claim in June of 2002 due to chronic injuries sustained in a 1995 car accident. Specifically, Plaintiff claimed that she was disabled due to fibromyalgia and back pain .  On July 17, 2002, Defendant approved Plaintiff's claim with a disability date of March 14, 2002 and paid all benefits that had accrued since the elimination period expired on June 12, 2002.

In August of 2002, Defendant retained CorVel Corporation ("CorVel") to update Plaintiff's medical status.  Based on the findings of a Corvel employee, Glen Tichauer ("Tichauer"), Defendant requested Dr. Patel perform an independent medical examination of Plaintiff on November 13, 2002.

On December 10, 2002, Defendant informed Plaintiff that she no longer met the definition of disability under the Policy and that her benefits would terminate on December 31, 2002.  Plaintiff subsequently appealed the decision in February of 2003 without submitting any new information.  Defendant upheld its determination in May of 2003.

During the same month, Plaintiff submitted a second appeal and included new records from her acupuncturist and the Social Security Administration's approval of benefits.  Defendant referred the second appeal to an independent reviewer, DCG Resource Options which recommended that Defendant uphold its determination that Plaintiff was no longer disabled. On September 22, 2003, Defendant informed Plaintiff that its previous determination was going to be upheld even in light of the additional information provided by Plaintiff.  Plaintiff subsequently filed a Complaint [Doc. No. 1] on May 24, 2004.

**DISCUSSION**

The Court will first determine the appropriate standard of review.

**I. Standard of Review**

The Court must first determine the applicable standard of review.

*A. Policy Language*

The Policy reads in pertinent part:

> Part 15.  ALLOCATION OF AUTHORITY
>
> Except for those functions which the Group Policy specifically reserves to the Employer, we have the full and exclusive authority to administer claims and to interpret the Group Policy and resolve all questions arising in the administration, interpretation, and application of the Group Policy.
>
> Our authority includes, but is not limited to, the following:
>
> 1. The right to resolve all matters when a review has been requested.
> 2. The right to establish and enforce rules and procedures for the administration of the Group Policy and any claim under it.
> 3. The right to determine (a) your eligibility for Insurance, (b) your entitlement to benefits, and (c) the amount of the benefits payable to you.

Plaintiff contends that because the Policy reserves some functions to the employer, it fails to grant Defendant discretion to determine eligibility.  Initially, the Court finds that functions reserved to the employer are: 1) notifying the employee if evidence of insurability is required when applying for benefits; 2) approving a leave of absence; 3) providing claim forms to employees; and 4) completing a claims statement.  The Court also finds that the policy clearly states: "we [Defendants] have the full and exclusive authority to administer claims and to interpret the Group Policy and resolve all questions arising in the administration, interpretation, and application of the Group Policy."  Furthermore, the Court finds that the Ninth Circuit Court of Appeals has interpreted almost the exact same language and found that such language conferred discretion on the administrator and that an abuse of discretion standard was applicable.  <u>Bendixen v.</u>

Standard Ins. Co., 185 F.3d 939, 943 (9th Cir. 1999).[1]  Accordingly, the Court finds that Policy clearly and unambiguously confers discretion on the Defendant and therefore the abuse of discretion standard presumptively applies.  The Court, however, must now address Plaintiff's assertion that Defendant's decision to deny benefits should still be reviewed under the *de novo* standard because a serious conflict of interest exists.

### *B. Conflict of Interest*

"To prove that a serious conflict of interest exists, and to override a plan's unambiguous conferral of discretion to plan administrator, the plaintiff must provide [ ] material probative evidence beyond the mere fact of the apparent conflict, tending to show that the fiduciary's self-interest caused a breach of the administrator's fiduciary obligations to the beneficiary."  Abatie, 421 F.3d at 1066 (quoting Atwood v. Newmont Gold. Co., 45 F.3d 1317, 1323 (9th Cir. 1995)).

Plaintiff contends the following actions taken by Defendant establish that Defendant breached its fiduciary duty:

1) Defendant ignored a physician statement from Dr. Marshall (Plaintiff's treating physician) even though it was required to accept the opinion of Dr. Marshall over the opinion of Dr. Patel (the independent physician who examined Plaintiff at the request of the Defendant);

2) Defendant failed to consider whether Plaintiff was disabled under Subsection (b) of the definition of disability;

3) Defendant inappropriately required her to provide objective medical evidence that she was disabled;

4) Defendant relied on inadequate information to make its decision and failed to request additional information;

---

[1] The policy in Bendixen stated: "[e]xcept for those functions which the Group Policy specifically reserves to the Policy Owner, we have the full and exclusive authority to control and manage the Group Policy, to administer claims, and to interpret the Group Policy and resolve all questions arising in the administration, interpretation, and application of the Group Policy."  Bendixen, 185 F.3d at 943 n. 1.

- 4 -

1             5) Defendant improperly ignored Dr. Patel's opinion that she should return to work
2     gradually; and
3             6) Defendant improperly terminated her benefits without evidence her condition
4     changed.
5             The Court will address Plaintiff's contentions in order starting with Plaintiff's claim
6     that the Defendant improperly ignored the opinion of Dr. Marshall.  The Court finds that
7     Record, directly contradicts this assertion as it contains a form sent to Dr. Marshall by
8     Defendant requesting that Dr. Marshall advise them of any clinical findings and provide
9     them with any reports or data that may be pertinent.  The Record also indicates that
10    Plaintiff initially paid benefits to Plaintiff based in part on Dr. Marshall's diagnosis of
11    disability but later re-evaluated and rejected his opinion in light of new evidence. See
12    Jordan v. Northrop Grumman Corp., 370 F.3d 869, 877 (9th Cir. 2004) (finding that
13    where the insurer considered and rejected the insured's physician's testimony, such
14    testimony was not ignored.)
15            Plaintiff, however, also argues that it was improper for Defendant not to accept her
16    treating physician's opinion. The Court finds that the Policy expressly gives Defendant
17    the right to obtain in independent examination and that Defendant was not required to
18    accept Dr. Marshall's opinion over Dr. Patel's opinion.  See Black & Decker Disability v.
19    Nord, 538 U.S. 822, 831, 123 S.Ct. 1965 (2003) (stating "[n]othing in [ERISA]
20    itself...suggests that plan administrators must accord special deference to the opinions of
21    treating physicians.  Nor does [ERISA] impose a heightened burden of explanation on
22    administrators when they reject a treating physician's opinion"). Furthermore, the Court
23    finds that the existence of conflicting physician testimony is not novel or unique and that
24    Defendant's acceptance of one opinion over the other is not evidence that Defendant acted
25    arbitrarily.  See Jordan, 370 F.3d at 880.  Accordingly, the Court finds that the rejection
26    of Dr. Marshall's testimony is not material and probative evidence of a conflict of interest.
27            Plaintiff also contends that Defendant failed to consider the possibility that she was
28    disabled under Subsection (b) which states that she would be disabled if, as a result of a

- 5 -

sickness or injury, she is: "[u]nable to earn more than 80% of [her] Indexed Predisability Earnings while working in [her] occupation." The Court finds that this definition is not applicable to this case because any loss of earnings would not be attributable to a sickness or injury because Defendant concluded that Plaintiff was capable of working full-time. In addition, Plaintiff was not working in her regular occupation and there is no evidence that she was working in any occupation. Thus, the Court finds that Defendant correctly determined that Subsection (b) was irrelevant to its analysis of Plaintiff's claim.

Next, the Court will address Plaintiff's assertions regarding the Defendant's investigation of her claim, namely: 1) that Defendant required Plaintiff to prove her disability by objective evidence and 2) that Defendant relied on insufficient information and failed to request additional information. Initially, the Court finds that Plaintiff has failed to point to any evidence in the Record to support her allegations that Defendant required her to prove by objective evidence that she was disabled. The Court also finds that the Record demonstrates that Defendant requested Plaintiff's medical records, interviewed Plaintiff, interviewed Plaintiff's employer, interviewed Dr. Marshall and requested an independent medical examination.

Plaintiff also contends that Defendant's failure to request additional information is evidence of a conflict of interest. In support of this contention, Plaintiff relies on Booten v. Lockheed Med. Benefit Plan, 110 F.3d 1461 (9th Cir. 1997) for the proposition that "if the plan administrators believe that more information is needed to make a reasoned decision, they must ask for it." Id. at 1463. Significantly, the insurer in Booten was informed by a consultant that additional information may substantiate the insured's claims. Id. In the instant case, however, there is no evidence that Defendant was informed by a third party that any additional information would substantiate Plaintiff's claims. The Court also finds that when Plaintiff requested that Defendant consider additional information during Plaintiff's second appeal, Defendant acquiesced. Moreover, the Court finds that Defendant obtained substantial information from Plaintiff's treating physicians through interviews and the review of documents. Accordingly, the Court finds

- 6 -

that Plaintiff has failed to put forth material probative evidence demonstrating that the manner in which Defendant investigated Plaintiff's claim is indicative of a conflict of interest.

Plaintiff further argues that Defendant ignored Dr. Patel's opinion that Plaintiff's return to work should be gradual and that such conduct is evidence a conflict of interest existed. The Court, however, finds that while Dr. Patel recommended a gradual return to work over a four week period, Dr. Patel also explicitly stated: "if this is not possible, she [Plaintiff] is capable of returning to eight hours a day, five days a week of work." Accordingly, the Court finds that Plaintiff's assertion that Defendant ignored Dr. Patel's instructions is not supported by the Record and therefore is not material or probative evidence of a conflict of interest.

Finally, Plaintiff contends that Defendant improperly terminated benefits without evidence her condition changed. While the Ninth Circuit has not determined whether the burden of proof shifts when a plan administrator decides to terminate benefits after initially finding the recipient eligible for benefits, the Fifth Circuit Court of Appeals has addressed this issue. Ellis v. Liberty Life Assurance Co., 394 F.3d 262 (5th Cir. 2004). In Ellis, the court stated: "[w]e have found no statutory, regulatory, or jurisprudential authority...that would heighten the level of proof needed for a plan fiduciary to determine entitlement or non-entitlement to LTD benefits simply because the fiduciary previously had approved entitlement and paid benefits to the employee in question." Id. at 274. The court also specifically held that the plan fiduciary is not required to obtain proof of a substantial change in a recipient's medical condition after the initial determination of eligibility. Id. This Court is persuaded by the reasoning set forth in Ellis and finds that the burden of proof remains with Plaintiff to establish that she is still disabled under the Policy.

Moreover, Plaintiff's condition changed. Specifically, Plaintiff stated that she was hiking pinnacle peak twice a week, was lifting weights and doing yoga. Additionally, Dr. Patel examined Plaintiff and concluded that she was capable of full time work. Thus,

- 7 -

1  even if Defendant was required to establish Plaintiff's condition changed in order to re-
2  evaluate Plaintiff's disability status, the Court finds that the Record contains evidence of a
3  change in condition.  Accordingly, the Court also finds that Plaintiff has failed to put
4  forth material or probative evidence that a conflict of interest existed based on
5  Defendant's decision to reevaluate Plaintiff's disability status.
6       Upon review of the evidence contained in the Record, the Court finds that Plaintiff
7  has failed to provide material, probative evidence "tending to show that the fiduciary's
8  self-interest caused a breach of the administrator's fiduciary obligations to the
9  beneficiary."  Atwood, 45 F.3d at 1323.  Thus, the Court finds that the abuse of discretion
10  standard is the proper standard of review in this case.  Having found that Plaintiff has not
11  met her burden to establish a serious conflict exists, the Court need not proceed to the
12  next step in a conflict analysis and will proceed to address Plaintiff's Motion to
13  Supplement the Record.
14  **II.  Motion to Supplement the Record**
15       Plaintiff relies on Mongeluzo v. Baxter Travenol Long Term Disability Benefits
16  Plan, 46 F.3d 938 (9th Cir. 1995) to support her request that the Court expand the Record
17  to include two new documents: 1) a document that sets forth the American College of
18  Rheumatology criteria for the classification of Fibromylgia," and 2) a document
19  containing "Plaintiff's self reported symptoms and limitations."
20       The Ninth Circuit has held that evidence outside the administrative record may be
21  admitted "only when circumstances clearly establish that additional evidence is necessary
22  to conduct an adequate *de novo* review of the benefit decision."  Van Gerwen v.
23  Guarantee Mut. Life Co., 214 F.3d 1041, 1047 (9th Cir.2000) (quoting  Mongeluzo, 46
24  F.3d at 944; see also Kearney, 175 F.3d at 1091(stating "'[i]n most cases,' only the
25  evidence that was before the plan administrator should be considered").
26       Initially, the Court finds that Plaintiff's reliance on Mongeluzo is misplaced as the
27  court in that case employed a *de novo* standard of review and this Court has determined
28  that the abuse of discretion standard applies here.  The Court also finds that Plaintiff has

1  failed to explain why the circumstances "clearly establish" that the Record should be
2  supplemented and instead relies on the conclusory statements "so the Court can make a
3  fully informed decision" and "so the Court can see the entire picture." (Pl.'s Motion to
4  Suppl. Record p. 2). Accordingly, the Court finds that Plaintiff has failed to set forth any
5  law supporting its request to supplement the Record when the abuse of discretion
6  standard of review applies and has likewise failed to put forth evidence that establishes
7  why the circumstances "clearly establish" that the Record should be supplemented. Thus,
8  Plaintiff's Motion is denied.

### III. Abuse of Discretion

Having found that the abuse of discretion standard applies, the Court will now determine, based on the Record, whether Defendant did in fact abuse its discretion in denying Plaintiff's claim for disability benefits. The Ninth Circuit has found that "[a]n administrator abuses its discretion if it renders a 'decision without any explanation, or in a way that conflicts with the plain language of the plan, or that is based on clearly erroneous findings of fact.'" Abatie, 421 F.3d at 1066 (citing Atwood, 45 F.3d at 1323-24; see also Jordan, 370 F.3d at 875 (stating that under the abuse of discretion standard an administrator's decision must be upheld unless it is arbitrary and capricious).[2] The Ninth Circuit has also cautioned when a court reviews an ERISA administrator's benefits determination it may not substitute its judgment for the that of the administrator's unless such a decision was either clearly erroneous or the record contains no reasonable basis for the decision. Taft v. Equitable Life Assur. Soc'y, 9 F.3d 1469, 1473 (9th Cir. 1994).

Having examined the Record, the Court makes the following findings of fact:

---

[2] The Ninth Circuit has recognized that some of its cases state that an "arbitrary and capricious" standard is applied, while others use the term "abuse of discretion." Compare Eley v. Boeing Co., 945 F.2d 276, 278-79 (9th Cir. 1991) ("abuse of discretion") with Dytrt v. Mountain State Tel. & Tel. Co., 921 F.2d 889, 894 (9th Cir. 1990) ("arbitrary and capricious"). The Ninth Circuit, however, has concluded that the standards differ in name only. See Barnett v. Kaiser Found. Health Plan, Inc., 32 F.3d 413, 415 (9th Cir. 1994).

1. The Policy contains an "own occupation" definition of disability during the first 24 months and a "any occupation" definition of disability after benefits have been paid for 24 months.
2. Plaintiff's benefits were terminated during the first 24 months of disability.
3. During the first 24 months of a disability, the following definition of disability applies:

   You are disabled from your own occupation if, as a result of your sickness, accidental bodily injury, or pregnancy, you are either:

   (a) Unable to perform with reasonable continuity the material duties of your own occupation; or

   (b) Unable to earn more than 80% of your Indexed Predisability Earnings while working in your own occupation.

4. After the first 24 months of disability, the following definition applies:

   You are disabled from your own occupation if, as a result of your sickness, accidental bodily injury, or pregnancy, you are either:

   (a) Unable to perform with reasonable continuity the material duties of any gainful occupation for which you are reasonably fitted by your education, training, and experience; or

   (b) Unable to earn more than 80% of your Indexed Predisability Earnings while working in your own occupation or any other occupation.

5. Plaintiff's job as a Nurse Case Manager was a sedentary position that involved primarily clerical duties but did not require her to frequently push or pull objects or carry more than ten pounds.
6. Plaintiff's treating physician Dr. Marshall found that she was able to sit for 2-3 hours a day, stand 1 hour per day, walk 1 hour per day and drive 4 hours per day and indicated Plaintiff had a "moderate limitation of functional capacity."
7. Despite these findings, Dr. Marshall concluded that Plaintiff was "unable to perform the duties of [her] job" but did not elaborate or provide a basis for this finding.
8. During a meeting with CorVel employee Tichauer, Plaintiff filled out a self-reported functional limitations form and indicated that she could sit, stand, or walk

- 10 -

|   |     |                                                                                   |
|---|-----|-----------------------------------------------------------------------------------|

1    for up to one-half hour at a time and could sit between two and four hours
2    throughout an eight hour day.  Plaintiff further stated that she could stand for a half
3    hour to a hour, could walk one to two hours throughout the day and could
4    occasionally lift 10 pounds and carry up to five pounds.

5  9.  Plaintiff informed Tichauer that she hiked Pinnacle Peak twice a week, lifted
6    weights two to three times a week and performed yoga and stretching exercises
7    throughout the day.

8  10.  Plaintiff informed Tichauer that she was interested in returning to work at Health
9    Insurance in order to preserve insurance coverage.  Tichauer acted as a liaison
10    between Plaintiff and Health Insurance and arranged for a part-time position that
11    began on October 15, 2002.  Despite being cleared for part-time employment by
12    Dr. Marshall, Plaintiff failed to commence work on October 15, 2002 due to her
13    desire to go on a previously scheduled vacation.

14  11.  At the request of Defendant, Dr. Patel examined Plaintiff's medical records and
15    conducted a physical examination.

16  12.  During his examination of Plaintiff, Dr. Patel made the following observations:

17    • Plaintiff stood up unassisted, possessed a normal gait, was capable of heel
18       and toe standing without weakness, and was able to squat and rise
19       unassisted.

20    • "Plaintiff's spinal examinations reveals a normal posture with no
21       deviations."

22    • "There is no evidence to suggest any significant trigger points at this time"
23       and "[t]here is no palpable tenderness or trigger points over the
24       thoracolumbar spine and no sciatic or sacroiliac joint tenderness."

25    • "Palpation did not elicit any tenderness over the deltoid, proximal forearm
26       musculature, lateral proximal thigh or medial knees."

27    • "Provocation of the elbows did not produce any significant elbow pain."

28

13. Dr. Patel also noted that he did not find "all the features of fibromyalgia syndrome as described by the American College of Rheumatology at this time" and then opined that "there has been improvement since her [Plaintiff's] evaluation by a rheumatologist a few years ago. It appears based on the activity described by patient that she is very active and seems to be capable of routine sedentary to light form of activities reasonably well."

14. Dr. Patel did find that Plaintiff has intermittent myofascial pain, arthrolgias, myalgias and a pre-existing condition of cervical disc degeneration, but also found that "...she seems to be doing reasonably and her findings are not as impressive. Indeed, I do not see any evidence for inflammatory anthropathy and this has been confirmed by various lab studies in the past, nor is there any indication that she has full features of fibromyalgia at this time."

15. Based on his observations during the physical exam and his review of Plaintiff's medical records, Dr. Patel concluded: 1) that Plaintiff's current symptoms have been ongoing since her motor vehicle accident in 1995; 2) additional medical treatment was not warranted; 3) she is capable of returning to her then-current occupation based on the "job description and review of her overall objective findings and need for restrictions" and 4) a gradual return over 4 weeks would be ideal, but Plaintiff is physically capable of returning to work full time.

16. After reviewing the available evidence, Defendant concluded that Plaintiff was no longer disabled under the "own occupation" definition in the policy and sent Plaintiff a detailed letter setting forth the basis for its conclusion.[3]

Based on the preceding findings, the Court finds that the Record contains substantial evidence to support Defendant's determination that Plaintiff was no longer

---

[3] In a letter dated May 13, 2003, Defendant set forth Dr. Patel's findings in detail, explained the rationale for concluding her prior job was sedentary, and informed her of the decision to terminate benefits. Defendant sent Plaintiff a second letter on September 22, 2003 informing Plaintiff that its decision remained unchanged after her second appeal.

- 12 -

disabled and that such a determination was reasonable.  Furthermore, the Court finds that the Record indicates that: 1) Defendant clearly explained its determination to Plaintiff, 2) Defendant's determination does not conflict with the plain language of the Policy and 3) the determination was not based on a clearly erroneous finding of fact.  Accordingly, the Court finds that Defendant did not abuse its discretion in determining that Plaintiff was not disabled under the policy.

This determination notwithstanding, the Court will briefly address, in order, Plaintiff's arguments that: 1)  Defendant improperly failed to credit her treating physician; 2) Defendant improperly ignored the determination of the Social Security Administration; and 3) that judicial estoppel should be applied to estop Defendant from denying benefits.

The Supreme Court has held that "[n]othing in [ERISA] itself...suggests that plan administrators must accord special deference to the opinions of treating physicians.  Nor does [ERISA] impose a heightened burden of explanation on administrators when they reject a treating physician's opinion."  Nord, 538 U.S. at 831.  The Ninth Circuit has interpreted Nord to "plainly hold[] that a treating physician gets no special weight and can be rejected on the basis of reliable evidence with no discrete burden of explanation."  Jordan, 370 F.3d at 879 (9th Cir. 2003).  This Court finds that it was not improper for Defendant to reject Dr. Marshall's opinion as the Record contains substantial and reliable evidence to support it determination that Plaintiff was not disabled.

Plaintiff also argues that Defendant relinquished its right to determine whether Plaintiff was disabled when it exercised its right to reduce Plaintiff's benefit payments by the amount of Social Security benefits received by Plaintiff.  The Court finds that Policy specifically provides for such an offset.  Additionally, the Supreme Court has noted that there are "critical differences between the Social Security disability program and ERISA benefits plans."  Nord, 538 U.S. at 823.  Thus, the Court finds that off-setting Social Security disability payments does not affect Defendant's ability to re-evaluate a claimant's disability status.

1       Plaintiff also contends that the doctrine of judicial estoppel precludes a party from
2 gaining an advantage by asserting inconsistent positions in different court or
3 administrative proceedings.  See Risseto v. Plumbers & Steamfitters Local 343, 94 F.3d
4 597, 600-01 (9th Cir. 1996).   The Court, however, finds that Plaintiff's reliance on the
5 doctrine of judicial estoppel is misplaced as she has failed to put forth evidence that
6 Defendant took inconsistent positions in an administrative or court proceeding.

## CONCLUSION

8       The Court finds that the appropriate standard of review in this case is abuse of
9 discretion and further finds that Defendant did not abuse its discretion when it determined
10 that Plaintiff was not disabled under the Policy.   Accordingly,

11       **IT IS HEREBY ORDERED** that Defendant's Motion for Determination of the
12 Standard of Review and Decision on the Administrative Record [Doc. No. 28] is
13 **GRANTED**.  The Court finds that the Administrative Record shall be reviewed under the
14 abuse of discretion standard.  The Court also finds that Defendant did not abuse its
15 discretion when it determined that Plaintiff was not disabled under the Policy and that
16 Defendant's determination is upheld.

17       **IT IS FURTHER ORDERED** that Plaintiff's Motion to Supplement the Record
18 [Doc. No. 36] is hereby **DENIED**.

19       DATED this 28th day of March, 2006.

Stephen M. McNamee
Chief United States District Judge